# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRED T. CALDWELL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 10-202-SLR |
| | ) |
| PERRY PHELPS, Warden, | ) |
| and JOSEPH R. BIDEN, III, | ) |
| Attorney General of the State | ) |
| of Delaware, | ) |
| | ) |
| Respondents. | ) |

Mark S. Greenberg. Counsel for petitioner.

Danielle J. Brennan. Deputy Attorney General, Department of Justice, Wilmington, Delaware. Counsel for respondents.

## MEMORANDUM OPINION

March  15 , 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner Fred T. Caldwell ("petitioner") is a Delaware inmate in custody at the James T. Vaughn Correctional Center in Wilmington, Delaware. Presently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1) For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of June 25, 2003, petitioner and his cousin, Warner Henry, were visiting the home of Colleen Thompson in the Rodney Village subdivision south of Dover, Delaware. *See Caldwell v. State*, 865 A.2d 521 (Table), 2004 WL 2937673, at *1 (Del. Dec. 17, 2004). At approximately 10:00 p.m., a man petitioner did not recognize knocked on the front door. When no one answered the front door, the man began breaking through the back door. Petitioner told Henry to retrieve a handgun that was located in the house. Petitioner escaped by jumping out a front window and running across the street. He ran to a nearby house where he called the Delaware State Police to report the break-in. The intruder entered the house and started beating Henry, who eventually was able to escape by climbing out the bathroom window. *Id.* at *1-2.

The police were notified about the break-in at approximately 10:15 p.m. *Id.* Detective William Porter and Corporal Robert Wallace were assigned to the case. As Detective Wallace drove through the Rodney Village subdivision looking for the intruder, he encountered a man running toward him who matched the intruder's description. As the man approached the police car, Detective Wallace jumped out and grabbed him.

Detective Wallace found a plastic baggie containing what appeared to be crack cocaine in the man's right front pocket and a scale in the man's left front pocket. The man, who was later identified as Warner Henry, had a bleeding head wound. *Id.*

Petitioner telephoned Thompson, who reported that Henry had been hurt and that the police had found drugs in Henry's pocket. *Id.* Petitioner agreed to be interviewed by the police and Thompson drove him to the Delaware State Police Troop 3. Thompson and petitioner arrived at the troop between 12:00 midnight and 12:30 a.m. At the troop, Detective Porter interviewed petitioner about the incident. During the interview, which was not videotaped,[1] petitioner told Detective Porter that he and Henry had been out delivering drugs in the Capitol Park areas of Dover earlier the same day. Petitioner also told Detective Porter that, at the time of the break-in, he had between $2,000 and $3,000 in cash in his pocket. *Caldwell*, 2004 WL 2937673, at *1-2.

After hearing about petitioner's drug dealing, Detective Porter contacted two of the Drug Unit detectives at Troop 3, Donald Boulerice and David Ellingsworth. *Id.* Detective Ellingsworth interviewed petitioner during the early morning of June 26, 2002, with Detective Boulerice videotaping it from another room. During the interview, petitioner admitted to Detective Ellingsworth that he had given a half ounce of cocaine to Henry the day before the break-in; that he owned the handgun he told Henry to retrieve; and that he had $3,000 and four ounces of crack cocaine in his possession at the time of the break-in. Petitioner also stated that he "moved" one to two kilograms of cocaine per week.

---

[1]The Delaware Supreme Court's decision regarding petitioner's direct appeal asserts that Detective Porter's interview of petitioner was videotaped; however, Detective Porter testified that the interview was not videotaped. (D.I. 22, App. to State's Ans. Br. in *Caldwell v. State*, No.12,2004 at B-12)

Detective Boulerice interviewed petitioner's cousin, Warner Henry. *Id.* Henry told Detective Boulerice that he had some crack cocaine in his possession at the time of the break-in which he had obtained from petitioner and for which he owed petitioner $950. Henry also told Detective Boulerice that petitioner sold approximately three kilograms of cocaine per week. At trial, Henry claimed that what he told Detective Boulerice during the interview was false. Henry also testified that he pled guilty to conspiring with petitioner to traffic in cocaine. *Id.*

Petitioner testified in his own behalf at trial. *Id.* He acknowledged that he previously had been convicted of drug trafficking and possession with intent to deliver illegal drugs, but denied that he was currently a drug dealer. Petitioner claimed that he had only pretended to be a big time drug dealer in the interview because Detective Ellingsworth said Henry had sustained potentially fatal injuries and petitioner was concerned about being charged with Henry's homicide if he did not tell Detective Ellingsworth what he wanted to hear. *See Caldwell*, 2004 WL 2937673, at *1-2.

In September 2003, a Delaware Superior Court jury convicted petitioner of trafficking cocaine, possession with intent to deliver cocaine, and second degree conspiracy. *Id.* He was sentenced as an habitual offender to two terms of life imprisonment, and to an additional two years imprisonment on the conspiracy charge. Acting pro se, petitioner appealed, and the Delaware Supreme Court affirmed his convictions on December 17, 2004. *Id.*

Thereafter, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), which was denied. The

3

Delaware Supreme Court affirmed that judgment. *Caldwell v. State*, 991 A.2d 17 (Table), 2010 WL 376902 (Del. Jan. 29, 2010), *rearg't den*. Mar. 3, 2010.

Petitioner timely filed a § 2254 application in this court. (D.I. 1) The State filed an answer (D.I. 20), arguing that some of the claims should be dismissed as meritless and others as procedurally barred from habeas review.

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although

treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray,* 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means

5

factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or

6

state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner's application presents the following five grounds for relief: (1) the Superior Court denied petitioner a fair trial by failing to suppress his videotaped statement to Detective Ellingsworth and by failing to give a missing evidence instruction regarding that videotape to the jury; (2) petitioner's unrecorded statement to Detective Porter was taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); (3) the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not providing the defense with petitioner's police statement to Detective Porter; (4) defense counsel provided ineffective assistance by introducing unredacted preliminary hearing transcripts at trial; (5) defense counsel provided ineffective assistance by failing to call Demetrius Caldwell as a defense witness during trial; (6) defense counsel provided ineffective assistance by failing to object after the trial court did not answer a jury note; and (7) he was denied his Sixth Amendment right to counsel on direct appeal.

7

## A. Claim One: Failure To Suppress Videotaped Statement

During the trial, defense counsel filed a motion to suppress the introduction of the videotape of petitioner's police statement to Detective Ellingsworth because it did not include the exculpatory statements petitioner made during interview breaks. The trial court denied the motion, and also did not give a missing evidence instruction. Now, in claim one, petitioner contends that the Superior Court violated his due process right to a fair trial by failing to suppress the videotaped interview or, alternatively, by failing to give a missing evidence instruction. More specifically, petitioner asserts that the State violated its duty to disclose exculpatory evidence under *Brady* by failing to preserve the entire recorded interrogation. Petitioner presented this claim on direct appeal, and the Delaware Supreme Court denied it as meritless. Therefore, habeas relief will only be available if that decision was contrary to, or an unreasonable application of, clearly established federal law.

The relevant background facts are as follows. Detective Ellingsworth interviewed petitioner on June 26, 2002, with Detective Boulerice videotaping the interview from a separate room. During four "breaks" in the interview, Detective Ellingsworth left the interview room. Detective Boulerice stopped recording during these breaks, because nothing was occurring in the interview room and he wanted to save tape and condense the actual tape length of the interview. The two un-redacted tapes of petitioner's interview were three and one-half hours long and contained four gaps where the videotape was stopped and then restarted.

Defense counsel filed a pre-trial motion in limine to exclude the videotaped police interview pursuant to *Lolly v. State*, 611 A.2d 956, 959-61 (Del. 1992), contending that

8

the four gaps on the two videotapes constituted missing evidence that the State was obligated to preserve. The Superior Court conducted an evidentiary hearing on the motion in limine. Petitioner testified that, during the four unrecorded gaps in the interview, he told Detective Ellingsworth that he did not deal drugs; that he did not give Warner Henry the crack cocaine the State Police recovered from Henry the previous evening; and that he was simply "pulling [Detective Ellingsworth's] chain" when he said elsewhere in the interview that he was a contraband drug dealer who had supplied the crack cocaine to Henry. During the same pre-trial hearing, petitioner testified that his videotaped incriminatory admissions about being a drug dealer and supplying cocaine to Henry were fabrications. Petitioner acknowledged his prior convictions for drug trafficking and first degree burglary, and knew he was facing a potential mandatory life sentence as an habitual criminal if he had a new felony drug conviction in this case.

Three police witnesses also testified during the evidentiary hearing. Detective Porter testified about his initial interview of petitioner, which focused on the home invasion. During this initial unrecorded police interview, petitioner admitted that he and Warner had delivered drugs the preceding day, and that petitioner had $2000 to $3000 in his pocket when someone broke into Thompson's home and attacked Henry. Petitioner conjectured that the person who committed the home invasion was looking for him because of his drug activities.

Detective Ellingsworth testified about his interview of petitioner, which focused on petitioner's involvement in the drug activities that were mentioned in his first interview with Detective Porter. According to Detective Ellingsworth, during the interview gaps, petitioner did not recant his recorded admissions to contraband drug dealing and to

9

supplying Henry with cocaine. He also testified that petitioner volunteered the

information that the purpose of the home invasion was to find drugs and petitioner.

Finally, Detective Boulerice testified about his method of videotaping, explaining

that he stopped recording the four times that Detective Ellingsworh left the interview

room because nothing was going on.

The Superior Court denied the motion in limine at the conclusion of the

evidentiary hearing, stating, in relevant part,

> [t]here has been no evidence to suggest that substantive conversations were
> conducted during those gap periods. The Court has to examine the alleged
> missing evidence under the *Deberry* and *Hammond* analysis. In going through
> the analysis, one would look at the type of evidence that is alleged to be missing.
> In this case, it is gaps in testimony that is being transcribed, and as the
> prosecutor has pointed out, this Court has previously ruled that there is no
> requirement that interviews be taped. However, the gaps in the tape are not
> tangible, are not tangible evidence as was the case in *State versus Lolly*. They
> are recorded conversations. If no conversations took place and we have all the
> players who were present during those conversations present, and the best I can
> say from the missing gaps would be information that perhaps [petitioner] denied
> the allegations for which he is being charged with. And that is alleged to have
> been missing from the tape.
>
> The conduct of the police appears to the Court, although not a – as referred to by
> one officer as SOP procedure, but it does seem to be a normal procedure that
> the state police follows in taping particularly long conversations where it might be
> appropriate to save tape, although I might add that given the length of the
> conversation and the gap savings on tape it probably would have been more
> beneficial to allow the tape run for the amount of tape that was saved. It is
> probably insignificant. However, it appears that the interview was not forced or
> conducted in a threatening manner, and it was voluntarily participated in by
> [petitioner].
>
> In order to require a missing evidence instruction, it is clear when you examine
> the recent Supreme Court case of *White versus State* that the evidence must be
> indeed missing and that such evidence which is missing must be material to the
> party's guilt or innocence. I cannot find that the evidence missing is material to
> the party's guilt or innocence given the circumstances of this case.
>
> The significance of the evidence in the context of the total quantum of evidence
> available at trial, when one looks at that, we look at the following fact: The

10

detective has testified that no information was disclosed or discussed other than nonrelevant information by the interviewing officer. The information may have been beneficial given the relatively short gaps to simply allow the tape to run, as I pointed out. But given the short gaps in questioning and the vagueness of the alleged exculpatory information, I do not find that the – no recorded portions of the tape would be material to [petitioner's] guilt or innocence, and consequently, even if a portion was considered to be missing evidence, it does not appear – there does not appear to be any prejudice to [petitioner]. The evidence therefore will not be excluded on the basis of the motion, nor do I see a requirement at the present time that the *Lolly* instruction needs to be given.

(D.I. 22, State's Ans. Br. in *Caldwell v. State*, No.12, 2004, at 15-16) On direct appeal,

the Delaware Supreme Court affirmed the Superior Court's ruling after concluding that

competent evidence supported the Superior Court's determination that petitioner's claim

of missing evidence was not credible. *Caldwell*, 2004 WL 2937673, at *2.

The court now turns to the § 2254(d) inquiry required in this proceeding.

Although petitioner cites to *Brady* as support for claim one, the clearly established

federal law governing petitioner's missing evidence argument is the standard articulated

in *Arizona v. Youngblood*, 488 U.S. 51 (1988). In *Youngblood*, the United States

Supreme Court held that the failure by police to preserve potentially useful evidence is

not a denial of due process of law unless bad faith can be shown. *Id.* at 57-58.

Potentially useful evidence is "evidentiary material of which no more can be said than

that it could have been subjected to tests, the results of which might have exonerated

the defendant." *Id.* at 57.

In petitioner's case, the Delaware Supreme Court reviewed and denied the

instant claim under *Lolly* rather than under *Youngblood*. *Lolly* imposes a duty upon the

State to both preserve and gather evidence that may be material to a defendant's guilt

or innocence, whereas *Youngblood* only imposes a duty to preserve such evidence. *Id.*

at 960. As a result, in Delaware, a missing evidence instruction may be required when the State fails to gather evidence, not just when it fails to preserve evidence.[2] Considering that the Delaware Supreme Court applied a stricter standard than the one articulated in *Youngblood*, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The court also concludes that the Delaware Supreme Court's decision did not involve an unreasonable application of *Youngblood*. To begin, given petitioner's failure to provide clear and convincing evidence to the contrary, the court accepts as correct the Delaware state courts' determination that petitioner's claim of missing evidence was not credible. If there was no missing evidence, petitioner's argument that the Superior Court violated his right to a fair trial by not suppressing the videotape on "missing evidence" grounds necessarily fails. Moreover, even if the unrecorded four gaps in the interview could be interpreted as "missing evidence," petitioner has failed to present a viable due process claim under *Youngblood* because he has not established that the police acted in bad faith by failing to tape the four interview breaks. Finally, given the Superior Court's factual conclusion that petitioner's pre-trial testimony was not credible and that no exculpatory evidence was missing from the videotaped police evidence, the Superior Court reasonably concluded that there was no factual or legal basis for a missing evidence jury instruction.[2] *See Deberry*, 457 A.2d at 751-52.

---

[2]In Delaware, a missing evidence instruction is commonly referred to as a *Lolly* or *Deberry* instruction. *See Deberry v. State*, 457 A.2d 744 (Del. 1983). A missing evidence instruction requires "the jury to infer that, had the evidence been preserved [or gathered], it would have been exculpatory to the defendant." *Lunnon v. State*, 710 A.2d 197, 199 (Del. 1998).

[2]In *Deberry*, the Delaware Supreme Court established a bifurcated analysis for determining the appropriate response to the State's failure to preserve and/or collect the

For all of these reasons, the court will deny claim one in its entirety.

## B. Claim Two: *Miranda* Violation With Respect To First Police Statement

In claim two, petitioner contends that the unrecorded statement he gave to

Detective Porter was taken in violation of his *Miranda* rights. Petitioner further contends

that both police statements should have been suppressed as a result of the *Miranda*

violation that occurred during his first statement.

### 1. Suppression of first statement due to *Miranda* violation

On post-conviction appeal, the Delaware Supreme Court denied as meritless

petitioner's contention that his unrecorded statement should have been suppressed

because it was taken in violation of his *Miranda* rights. As a result, the instant argument

will only warrant habeas relief if the Delaware Supreme Court's decision was either

contrary to, or an unreasonable application of, clearly established federal law.

---

missing evidence in a particular case. The first part of the *Deberry* analysis involves
asking the following three questions:

>  (1) if the requested material was in the possession of the State at the time of the
> defense request, would it have been subject to disclosure under Criminal Rule 16
> or *Brady v. Maryland*;
>
> (2) if so, did the State have a duty to preserve the material; and
>
> (3) if there was a duty to preserve the material, was the duty breached, and what
> consequences should flow from a breach.

If it is determined that the State breached its duty to collect and preserve evidence, then
the court should proceed to the second part of the analysis to determine the proper
remedy. This portion requires considering:

> (1) the degree of negligence or bad faith involved;
>
> (2) the importance of the missing evidence considering the probative value and
> reliability of secondary or substitute evidence that remains available; and
>
> (3) the sufficiency of the other evidence produced at trial to sustain the

conviction.

*Deberry*, 457 A.2d at 750-52. If, under this analysis, the State failed to preserve or
collect evidence that is material to the defense, the defendant is entitled to a missing
evidence instruction. *See McCrey v.State*, 941 A.2d 1019 (Table), 2008 WL 187947, at
*2 (Del. Jan. 3, 2008).

13

The clearly established federal law governing statements given to the police is the standard articulated in *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. Pursuant to *Miranda*, law enforcement officers must warn a person in custody prior to questioning that he has a right to remain silent, that anything he says may be used against him as evidence, and that he has a right to counsel. *Id.*

However, the *Miranda* safeguards "are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). The term "interrogation" includes express questioning and any words or actions on the part of the police "that the police should know are reasonably likely to elicit an incriminating response." *Id.* at 301. Consequently, an officer cannot be held responsible for an unforeseeable statement by the suspect. *Id.* at 301-02.

Here, the Delaware Supreme Court denied the instant claim after determining that *Miranda* was not implicated because petitioner was "not being interrogated at the time he made the incriminating statements to Detective Porter." *Caldwell*, 2010 WL 376902, at *2. After reviewing the Delaware Supreme Court's decision within the framework established by *Miranda* and its progeny, the court concludes that the decision involved a reasonable application of clearly established federal law and was based on a reasonable determination of the facts. For instance, during both the pre-trial

14

evidentiary hearing and the trial, Detective Porter testified that he interviewed petitioner as a witness to the home invasion, not as a suspect to a crime. Petitioner knew Detective Porter was a police officer, yet he volunteered the information about his drug selling activities as the possible motivation for the home invasion. Petitioner did not become a suspect until he volunteered the information about his drug selling activity. Once Detective Porter finished interviewing petitioner about the circumstances surrounding the home invasion, both he and petitioner took a break; petitioner actually left the interview room and went to the lobby of the police station. When petitioner returned to the interview room, Detective Porter was not present; rather, Detective Ellingsworth was in the room. Detective Ellingsworth then *Mirandized* petitioner and questioned petitioner about his drug activity.

Petitioner's opening brief on direct appeal corroborates Detective Porter's testimony. In his opening brief's statement of facts, petitioner asserts that "he was still a victim and not considered a suspect in police custody" during his interview with Detective Porter. (D.I. 22, Appellant's Op. Br. in *Caldwell v. State*, No. 12,2004, at 6) He asserts that "[o]nce the drug unit [became] involved [petitioner's] interview with Detective Porter was over." *Id.* "Sometime after that, [petitioner] was turned over to speak with the drug unit. [Petitioner] was then interrogated [] [and] once the interrogation started, the state police made the choice to consider [petitioner] a suspect instead of a victim." *Id.* at 6-7. Petitioner also explains that "the drug unit then made the decision to record that interrogation [with Detective Ellingsworth] on videotape, and read [petitioner] his *Miranda* rights so that the recording of that interrogation could be used against [petitioner] in a court of law." *Id.*

15

This record clearly demonstrates that petitioner was *Mirandized* once his status as a witness changed to that of a suspect, and that any "interrogation" for the purposes of *Miranda* occurred after Detective Ellingsworth informed him of his *Miranda* rights. Given these circumstances, the court concludes that the Delaware Supreme Court reasonably held that there was no *Miranda* violation with respect to Detective Porter's interview of petitioner. In turn, if petitioner's *Miranda* rights were not violated with respect to Detective Porter's interview, petitioner's argument for suppressing his statement to Detective Porter necessarily fails. Accordingly, the court will deny this portion of claim two as meritless.

### 2. Petitioner's second statement should have been suppressed because of the *Miranda* violation that occurred during petitioner's first statement

Relatedly, petitioner contends that the videotaped statement he gave to Detective Ellingsworth should have been suppressed because of the *Miranda* violation associated with his first statement. Having already determined that there was no *Miranda* violation with respect to petitioner's first statement, petitioner's argument for suppressing his second statement fails. Additionally, the court concurs with the State's contention that petitioner procedurally defaulted this argument by failing to present it to the Delaware Supreme Court on direct appeal or on post-conviction appeal. The court also concurs with the State's conclusion that there are no grounds for excusing this default because petitioner has not demonstrated cause and prejudice, or that a miscarriage of justice will occur absent review. Accordingly, the court will deny this portion of claim two as meritless and, alternatively, as procedurally barred.

For all of these reasons, the court will deny claim two in its entirety.

16

## C. Claim Three: *Brady* Violation

In claim three, petitioner contends the State violated its obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by failing to timely disclose prior to trial the specific non-recorded inculpatory statement he made to Detective Porter regarding his drug activity. Pursuant to *Brady,* "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Exculpatory evidence is material if the "evidence could reasonably be taken to put the case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). Here, petitioner's *Brady* argument is unavailing because he concedes that the unrecorded statement he gave to Detective Porter in his first statement was inculpatory, not exculpatory. Accordingly, the court will deny claim three as meritless.

## D. Claims Four and Five: Ineffective Assistance of Counsel

Petitioner presented claims four and five, both of which allege ineffective assistance of counsel, to the Delaware Supreme Court on post-conviction appeal, and the Delaware Supreme Court denied the claims as meritless. Therefore, habeas relief will only be available if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's

17

representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court correctly identified *Strickland* as the standard applicable to claims four and five. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court must also determine if the Delaware Supreme Court unreasonably applied the *Strickland* standard in denying the instant claims. In claim four, petitioner asserts that a portion of the preliminary hearing transcript introduced as an exhibit during trial included improper statements asserting that petitioner's arrest constituted a violation of petitioner's probation, as well as statements by the preliminary hearing judge

18

that there was sufficient evidence for the case to proceed to a grand jury. (D.I. 1 at 26)
Petitioner contends that counsel's failure to redact these statements amounted to
constitutionally ineffective assistance of counsel, because the transcript "tipped the
scales" against him. (D.I. 25 at 4)  Petitioner's conclusory and unsupported assertion of
prejudice, however, fails to satisfy *Strickland*'s second prong.  Therefore, the court
concludes that claim four does not warrant relief.

In claim five, petitioner contends that Demetrius Caldwell would have testified
that the statements Warner Henry made to the police implicating petitioner were false,
thereby supporting Henry's recantation at trial while destroying the credibility of Henry's
statement to the police.  Consequently, he asserts that counsel's failure to call
Demetrius Caldwell as a witness amounted to ineffective assistance.  Petitioner,
however, has not supported his description of Demetrius' potential testimony with any
documentation or affidavits from Demetrius himself.  Thus, because petitioner's
unsupported allegation about the potential content of Demetrius' testimony fails to
satisfy the prejudice prong of *Strickland*, the court will also deny claim five as meritless.

Accordingly, the court will deny claims four and five for failing to satisfy
§ 2254(d).

## E. Claim Six: Procedurally Barred

In claim six, petitioner contends that defense counsel provided ineffective
assistance by failing to object when the trial judge did not answer a jury note asking if
the effect the three-strikes law affected petitioner's case.  Petitioner did not exhaust
state remedies for this claim, however, because he did not present it to the Delaware
Supreme Court on post-conviction appeal.  At this juncture, any attempt to return to

19

state court and present the claim in a new Rule 61 motion would be time-barred under Delaware Superior Court Criminal Rule 61(i)(1), and barred as repetitive under Rule 61(i)(2). Therefore, the court must treat claim six as procedurally defaulted, meaning that it cannot review the merits of the claim absent a showing of cause and prejudice.

Petitioner has not alleged, and the court cannot discern, any cause for his procedural default. Rather, petitioner contends that he raised this issue in argument eight in his post-conviction filing "in the context of his claim that trial counsel was ineffective in not asking for a limiting instruction as to how the jury was to consider petitioner's trial testimony concerning his past criminal history." (D.I. 25 at 16) The court rejects this argument. Although courts must liberally construe pro se filings,[3] expecting the Delaware Supreme Court to interpret petitioner's explicit reference to counsel's failure to request a limiting instruction as somehow including a claim that counsel was ineffective for failing to answer a jury note extends well beyond the parameters of "liberal construction."

In the absence of cause, the court will not address the issue of prejudice. Additionally, the court concludes that petitioner's default should not be excused under the miscarriage of justice exception to the procedural default doctrine, because petitioner has not provided new reliable evidence of his actual innocence.

Accordingly, the court will deny claim six as procedurally barred.

## F. Claim Seven: Petitioner Was Denied His Sixth Amendment Right To Counsel On Direct Appeal

In his final claim, petitioner contends that he was denied his Sixth Amendment right to counsel on direct appeal because his waiver of the right to be represented by

---

[3]*See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

counsel was involuntary. Petitioner appears to argue that he only decided to represent himself on direct appeal because the Delaware state courts refused to provide a new public defender to represent him on direct appeal. Petitioner presented this claim to the Delaware Supreme Court on post-conviction appeal, and the Delaware Supreme Court denied it as meritless after determining that petitioner knowingly and voluntarily waived his right to counsel. Accordingly, petitioner will only be entitled to relief if that decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "The plain wording of this [Sixth Amendment] guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful defense." *United States v. Wade*, 388 U.S. 218, 225 (1967). The right to counsel attaches at all critical stages in the criminal justice process, including trial and sentencing. *See Maine v. Moulton*, 474 U.S. 159, 170 (1985); *Gardner v. Florida*, 430 U.S. 349, 358 (1997). The right to counsel is fundamental and does not depend on a request by the defendant. *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Carnley v. Cochran,* 369 U.S. 506, 513 (1962)("where the assistance of counsel is a constitutional requisite, the right to be furnished one does not depend on a request"). Nevertheless, the right to counsel is not absolute, and a defendant may lose the right through waiver or forfeiture. *Gideon*, 372 U.S. 335 (right to counsel may be affirmatively and voluntarily waived); *Johnson v. Zerbst*, 304 U.S. 458 (1938)(a defendant's waiver of the right to counsel must be affirmative and on the record).

21

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court held that a criminal defendant has a Sixth Amendment right to represent himself and, therefore, may affirmatively waive his right to counsel. A criminal defendant's waiver of counsel is only valid if the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835. A trial court must ensure that a defendant's waiver of counsel is knowing, voluntary, and intelligent before permitting a defendant to proceed pro se. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). A waiver is voluntary if the defendant is "not forced to make a choice between incompetent counsel or appearing pro se." *United States v. Taylor*, 113 F.3d 1136, 1140 (10th Cir. 1997).

"[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Consequently, the Sixth Amendment right to counsel does not guarantee a meaningful relationship between a defendant and counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). Additionally, although a defendant's right to counsel includes the right to counsel of one's choice, the "right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). Thus, an indigent defendant requesting new counsel must show good cause to warrant such substitution. Determining if good cause exists for substitution of counsel is a factual inquiry, and the defendant must be

given an opportunity to provide the court with the reason for his dissatisfaction. *United States v. Welty*, 674 F.2d 185, 190 (3d Cir. 1982).

Good cause for substitution of counsel is defined as a "conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney." *United States v. Goldberg,* 67 F.3d 1092, 1098 (3d Cir. 1995). A disagreement between the defendant and defense counsel over legal strategy does not constitute good cause requiring substitution of counsel, nor does a defendant's unilateral decision not to cooperate with court appointed counsel. *Id.* at 1098-99*; United States v. Gibbs*, 190 F.3d 188, 207 n.10 (3d Cir. 1999). A defendant's mere dissatisfaction with counsel also does not warrant substitution of counsel. *See United States v. Moses,* 58 Fed. Appx. 549, 555 (3d Cir. Feb. 3, 2003). Finally, if, after performing a proper inquiry, the trial court determines that good cause for substitution of counsel does not exist, then the court must "inform the defendant that he can either proceed with current counsel or represent himself." *Goldberg*, 67 F.3d at 1098.

Here, although the Delaware Supreme Court did not specifically apply United States Supreme Court precedent and its progeny in holding that the Superior Court had no basis upon which to deny petitioner his constitutional right to represent himself, the Delaware cases cited by the Delaware Supreme Court refer to the applicable precedent and properly articulate the parameters of a defendant's right to self-representation. Therefore, the court concludes that the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008)(Supreme Court of Pennsylvania's decision was not "contrary to" clearly

established Federal law because appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent).

The court's inquiry is not over, however, because it must also determine whether the Delaware Supreme Court's decision involved an unreasonable application of Supreme Court precedent to petitioner's case. The following facts are relevant to this inquiry. Defense counsel filed a notice of appeal on January 13, 2004. (D.I. 22) Petitioner then filed in the Delaware Supreme Court a motion for the withdrawal/appointment of substitute counsel. (D.I. 22, Defendant's App. to Op. Br. on Post-Conviction Appeal, *Caldwell v. State*, No.53,2009) The Delaware Supreme Court remanded the matter to the Superior Court for a determination concerning petitioner's intention to proceed pro se and his competence to make such a request. *Id.* at A-45 to A-49. The Superior Court held an evidentiary hearing on the matter on June 3, 2004. During that hearing, the Superior Court determined that petitioner understood he must either accept representation on appeal by his present court-appointed counsel or proceed pro se. *Id.* at A-51 to A-55. The Superior Court discussed with petitioner the reasons for his dissatisfaction with his court-appointed counsel. The Superior Court noted that, "although [petitioner] understands that an attorney may be able to pursue his appeal more effectively, he emphatically does not want his present attorney to represent him. He concludes that since he cannot receive substitute counsel, he has no other choice but to represent himself." *Id.* at A-53. After explaining to petitioner the responsibilities, dangers, and disadvantages of proceeding pro se, the Superior Court concluded that petitioner made a knowing and voluntary decision to represent himself. *Id.* at A-54. More specifically, the Superior Court explained that petitioner "has

24

evaluated the pros and cons in this decision and [] truly believes that he can do a better job than his court-appointed counsel and will follow the rules of the Supreme Court." *Id.*

After the Superior Court filed its report with the Delaware Supreme Court, petitioner filed a motion for the appointment of substitute counsel with the Delaware Supreme Court. *Id.* at A-57. Because the Superior Court had already informed petitioner during the hearing that his options were either to represent himself or proceed on appeal with his current counsel, the clerk of the Delaware Supreme Court wrote petitioner and directed him to inform the Delaware Supreme Court if he wished to continue on appeal with representation provided by his current court-appointed counsel or whether he wished to proceed pro se. *Id.* The clerk informed petitioner that if he failed to respond, the Delaware Supreme Court would adopt the Superior Court's report following remand recommending that petitioner's request to represent himself be granted. *Id.*

Petitioner responded to this letter by reiterating his request for substitute counsel, and by unequivocally stating that he did not wish to proceed with his present counsel. *Id.* After determining that there was "no just cause for the appointment of substitute counsel," the Delaware Supreme Court denied petitioner's motion for substitution of counsel. *Id.* Then, adopting the Superior Court's report following remand, the Delaware Supreme Court granted petitioner's motion to proceed pro se. In granting this motion, the Delaware Supreme Court noted petitioner's "clear expression of his desire not to be represented by his current counsel," the fact that petitioner was "fully informed of the hazards of self-representation," and that petitioner "voluntarily waived his right to the assistance of counsel." *Id.* at A-57, A-58.

25

Turning back to petitioner's contentions in this proceeding, to the extent he is arguing that the trial court violated his Sixth Amendment right to counsel by denying his motion for substitute counsel, the argument is unavailing. There is nothing in the state court record, or in petitioner's filings in this court, indicating that his counsel had either an actual or apparent conflict. Instead, it appears that petitioner's request for substitute counsel was wholly motivated by mere dissatisfaction with counsel's performance. Presented with what appears to be nothing more than petitioner's dissatisfaction with defense counsel's performance during his trial, the court cannot conclude that the Delaware Supreme Court unreasonably applied clearly established federal law in refusing to provide new counsel. *See United States v. Moses,* 58 F. App'x. 549, 555-56 (3d Cir. 2003).

The court further concludes that the Delaware Supreme Court reasonably applied *Faretta* in holding that petitioner's Sixth Amendment right to representation by counsel was not violated by requiring him to proceed pro se on direct appeal. When petitioner reiterated with the Delaware Supreme Court his desire for substitute counsel on direct appeal, he also unequivocally stated that he did not wish to proceed with his current court-appointed counsel. Viewing this unequivocal assertion in the Delaware Supreme Court in context with the Superior Court's proper *Faretta* inquiry and the Superior Court's determination that petitioner voluntarily and knowingly waived his right to the assistance of counsel, the court concludes that the Delaware Supreme Court reasonably applied clearly established federal law in denying denied petitioner's claim that his Sixth Amendment right to representation by counsel had been violated. Accordingly, the court will deny claim seven.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.